UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOE HAND PROMOTIONS, INC.,<br><br>            Plaintiff<br><br>      v.<br><br>THOMAS J. SOREL and 252 LOUNGE,<br>INC.,<br>            Defendants | Civil Action No. 10-30211-MAP |

REPORT AND RECOMMENDATION WITH REGARD TO
PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AND DEFENDANT
SOREL'S MOTION TO SET ASIDE DEFAULT
(Docket Nos. 12 and 24)
January 4, 2012

NEIMAN, U.S.M.J.

This action was originally referred to the court for a report and recommendation pursuant to 28 U.S.C. § 636(b) regarding a motion for the entry of a default judgment brought by Joe Hand Promotions, Inc. ("Plaintiff"). Although given the opportunity, neither one of the defendants - - Thomas J. Sorel ("Sorel") and 252 Lounge, Inc., (together "Defendants") -- ever responded to the complaint, leading to defaults entered against both. A hearing on Plaintiff's motion for default judgment, at which Sorel appeared, was held on December 1, 2011. Sorel thereafter filed a motion to set aside the default, which the court addresses below as well.

I. BACKGROUND

The complaint reveals the following facts. By contract, Plaintiff was granted the exclusive right to distribute the Ultimate Fighting Championship 96: Jackson v. Jardin program to be broadcast on March 7, 2009, via closed-circuit television and encrypted satellite signal. (Docket No. 1: Complaint ¶ 12.) Pursuant to contract, Plaintiff entered into subsequent sublicensing agreements with various commercial establishments, allowing them to publicly exhibit the program to their patrons. (*Id.* ¶ 13.) Defendants, with full knowledge that the program was not to be exhibited by them, intercepted, received or de-scrambled the program and unlawfully transmitted it at their establishment. (*Id.* ¶ 15.)

The complaint has four counts. Count I alleges that Defendants wilfully violated 47 U.S.C. § 605 and seeks, as to each defendant, up to $100,000 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), plus costs and attorney's fees. Count II claims that Defendants violated 47 U.S.C. § 553 and seeks, as to each defendant, up to $50,000 in damages pursuant to 47 U.S.C. § 553(C)(3)(B), plus costs and attorney's fees. Count III alleges conversion and Count IV alleges a violation of Mass. Gen. Laws ch. 93A which, together, seek appropriate additional relief.

On March 25, 2011, after Defendants failed to answer the complaint, the court entered a default and Plaintiff thereafter moved for a default judgment. The court set the matter down for a hearing on July 6, 2011, at which time Sorel appeared. Rather than proceeding, the court directed that Defendants' counsel, who Sorel mentioned during the course of the hearing, file his appearance by July 29, 2011, together with any motions Defendants wished to pursue. No such appearance was ever filed,

although Sorel himself filed a motion to set aside the default. (*See* Document No. 20.) The court allowed the motion but in part only; the court removed the default as to Sorel, who was directed to file an answer to the complaint by August 29, 2011, but not with regard to 252 Lounge, Inc. The court explained, as it had at the July 6, 2011 hearing, that Sorel, as a lay person, was unable to represent the corporate entity.

In any event, August 29, 2011 came and went without Sorel filing an answer. Thereafter, the court set the matter down once again for a hearing on Plaintiff's motion for a default judgment and assessment of damages, this time for December 1, 2011, at which time the court re-entered a default against Sorel. Sorel, yet again, appeared at the hearing. This time, however, the court went forward and heard arguments on damages. On December 5, 2011, Sorel, ostensibly on his own behalf, filed another motion to set aside the default, which Plaintiff has opposed.

The court has chosen to address Sorel's most recent motion, insofar as it is intertwined with Plaintiff's motion for a default judgment, in the context of this report and recommendation. In the end, the court will recommend that Sorel's motion to remove the default be denied and, further, that Plaintiff's motion for a default judgment as to both Sorel and 252 Lounge, Inc. be granted in the amount of $9,672.19.

## DISCUSSION

The court will address the two outstanding motions in turn.

A. Sorel's Motion to Remove Default

In his motion to remove the default, which appears to have been ghostwritten by an attorney, Sorel mentions that William J. Brown, an attorney, "had always

3

represented him" while he owned the 252 Lounge, Inc. The motion asserts that Mr. Brown had also represented Zach and Mark Tarka who, via a separate corporation, ran a restaurant named Adiagos, which operated adjacent to the lounge. The motion also states that the Tarkas were evidently "sued in regard to this matter and Mr. Brown represented them for a brief period of time until they decided to contact the California lawyer [for Plaintiff] and represent themselves."[1] The motion goes on to assert that "Plaintiff was aware of this" and makes mention of a "Settlement Offer" which was sent to its counsel on March 24, 2011, which was supposedly attached to the motion and marked as an exhibit. No such exhibit, however, has been provided to the court. Finally, the motion states that, "[e]ven if Mr. Brown did not have a conflict he could not help me because he [is] scheduled for a cancer operation within the next ten days."[2]

Sorel's motion, did, however, have attached to it a proposed Answer to the Complaint. The answer is ostensibly drafted with both defendants in mind, but is signed only by Sorel. The answer also appears to have been ghostwritten by an attorney.

The court will recommend that Sorel's motion to remove the default be denied for a number of reasons. First, as the procedural background to this case makes clear, Sorel has had more than sufficient opportunity to answer the complaint and/or arrange

---

[1] The court having checked, there is no Tarka or Adiagos named as a party in any action filed in the District Court for the District of Massachusetts.

[2] During the first scheduled default judgment hearing on July 6, 2011, Sorel mentioned yet other reasons why Brown had not entered an appearance for him or 252 Lounge, Inc.

4

to have counsel appear for him. *See Krause v. Featherston*, 376 F.2d 832, 834 (1st Cir. 1967) (upholding district court's refusal to set aside default where "appellants had ample notice of the hearing date and sufficient opportunity to retain other counsel and prepare to defend it."). Simply put, Sorel's motion comes too late.

Second, Sorel has not provided any good cause justification for his failure to abide by the court's prior orders, which gave him the opportunity to raise his defense in a more timely manner. *See Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir. 1989) (court may look at, among other factors, moving party's proffered explanation for the default). As he had in the past, Sorel merely suggests that he has been relying on counsel to take care of matters.

Third, in addition to further delaying matters beyond what is reasonable, Sorel's motion would accomplish little; it would neither remove the default against 252 Lounge Inc. nor alter the court's recommendation with regard to damages, set forth below. Sorel presented much of the same information at the hearing as he presently proffers through his motion, and that information has been taken into consideration by the court in making its recommendation.

B.  Plaintiff's Motion for Entry of Default Judgment

Plaintiff's motion for default judgment is accompanied by a memorandum together with three affidavits. The first affidavit is that of Joe Hand, Jr., Plaintiff's President, which includes both the distributorship agreement and the rate card for the program at issue. (Document No. 14.) It indicates that, to legitimately broadcast the program, Defendants would have had to pay Plaintiff $800 given the Lounge's seating

5

capacity of less than fifty. A second affidavit is that of Keith Walker, the investigator who entered the lounge on March 7, 2009, at approximately 11:00 p.m. and variously counted 11, 16 and then 10 patrons before leaving at 12:25 a.m. (Document No. 16.) The third affidavit is that of Plaintiff's attorney, who sets forth her fees as of late May 2011. (Document No. 15.)

Although, as described, the complaint lists four counts, Plaintiff's memorandum appears to seek damages from Defendants only for their violation of 47 U.S.C. § 605(a), the basis of Count I. This was confirmed by counsel at the December 1, 2011 hearing. In sum, Plaintiff is seeking $110,000 in damages together with attorney's fees of $2,750 ($2,250 as set forth in counsel's affidavit plus $500 for two additional hours since the papers were filed), and costs of $422.19.

Section 605(a) of Title 47 prohibits the unauthorized "intercep[tion]," "publi[cation]" or "divulge[nce]" of a broadcast. In applicable part, 47 U.S.C. § 605(e)(3) provides that a party aggrieved by a violation or violations of section 605(a) "may recover an award of statutory damages for each violation . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). In addition, section 605(e)(3) states as follows:

> In any case which the court finds that the violation was committed wilfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000.00 for each violation of subsection (a) of this section . . . .

47 U.S.C. § 605(e)(3)(C)(ii). A successful plaintiff's attorney's fees are also

recoverable. *See* Section 605(e)(3)(B)(iii).[3]

In the court's opinion Plaintiff is wise to limit its request for damages to only one of the counts. Still, the amount requested, in the court's opinion, is too high for at least two reasons. First, given the facts before it, the court questions whether Section 553(a)(1), which has a significantly lower minimum and maximum, rather than Section 605(a), is the more proper provision under which to proceed. In the end, however, the particular provision does not matter since the amount of damages which the court will recommend falls well below the maximum allowed even by Section 553(a)(1).

Second, given Sorel's presentation at the hearing, the court questions the degree of willfulness involved in the violation. To be sure, at least as far as 252 Lounge, Inc. is concerned, the court "may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based in allegations of willful conduct." *Time Warner Cable of New York v. Olmo*, 977 F. Supp. 585, 589 (E.D.N.Y. 1997). Moreover, as Plaintiff argues, "signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999). *See also*

---

[3]In some contrast, 47 U.S.C. § 553(a)(1), the basis of Count II, prohibits unauthorized "intercept[ion]" or "receipt" of a broadcast offered over a cable system. A party aggrieved by a violation of 553 may be awarded "damages, including statutory damages in a sum not less than $250 or more than $10,000, as well as attorneys' fees and costs. 47 U.S.C. § 553(a)(1) - (3). A court may enhance the award of damages "in an amount to $50,000" in a case where the violation was committed willfully and for purposes of commercial advantage or private financial gain. 47 U.S.C. § 553(c)(3)(B). Reasonable attorneys' fees are also recoverable. 47 U.S.C. § 553(c)(2)(C).

7

*Garden City Boxing Club, Inc., v. Batista*, 2007 WL 4276836, * 5 (E.D.N.Y. 2007) (unauthorized exhibition "in a place of business where certain events are shown to the public is generally held to have acted willfully and for purposes of commercial advantage"). Still, as Plaintiff's investigator himself explains, there was no cover charge to enter the lounge, only one of several televisions appeared to have broadcast the event, and a relatively small number of patrons, at most 16 at one time, were present.

Third, none of the cases relied upon by Plaintiff - - not one of which is from the First Circuit - - awards damages anywhere near the amount requested. *See*, *e.g., Time Warner Cable of New York City*, 977 F. Supp. at 585 (ordering $10,500 in damages for each of two wilful cable violations); *Iowa State Univ. Research Foundation Inc., v. ABC, Inc.*, 475 F. Supp 78, 83 (S.D.N.Y. 1979) (ordering $15,250 against defendant who improperly telecast copyrighted film), *aff'd*, 621 F.2d 57 (2d Cir. 1980). *See also Joe Hand Promotions, Inc., v. Salinetti*, 148 F. Supp. 2d 119 (D. Mass. 2001) ($17,785 in damages, fees, and costs). And fourth, awards in such instances have often been significantly less than even these examples suggest. For instance, in *Kingvision v. Maldonado*, 1998 WL 879683, at *2 (N.D. Ca. Dec. 11, 1998), a closely analogous case, the court only awarded statutory damages in the amount of $1,000 for what appears to be a similar section 605 violation, plus an additional $2,500 for wilfulness (plus $2,750 for a violation of 47 U.S.C. § 553), even though the plaintiff had requested a total of $150,000 as against three defaulted defendants.

If, as Plaintiff suggests, fifty was the maximum fire capacity for the lounge,

8

Defendants would have had to pay Plaintiff $800 for the right to broadcast the program. Defendants, however, paid nothing and cannot expect that they will only be subject to the costs they would have paid had they acted legitimately. *See Iowa State Univ. Research Foundation*, 475 F. Supp. at 83 (copyright infringer "cannot expect to pay the same price in damages as it might have paid after freely negotiated bargaining, or there would be no reason scrupulously to obey the copyright law"). Moreover, Defendants should have expected that their statutory violation would result in at least some enhancement of damages as a future deterrent not only to them but, perhaps, to others as well. *See Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 852 (11th Cir. 1990) (recognizing goal of deterrence and noting that court may consider party's attitude in determining statutory damage award); *Broadcast Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 660 (S.D.N.Y. 1996) (similar); *Cablevision Systems New York City Corp. v. Faschitti*, 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996) (similar); *Rodgers v. Eighty Four Lumber Co.*, 623 F. Supp. 889, 892 (W.D. Pa. 1985) (noting "common thread" in statutory damages cases that additional award for willfulness will put violators "on notice that it costs less to obey the . . . laws than to violate them").

Here, the court believes that a $4,000 base amount is appropriate for the statutory violation, *i.e.*, five times the $800 broadcast cost to Defendants. In addition, although there is little evidence that Defendants' unauthorized use of the broadcast was egregious, it had to have been committed wilfully, meriting at least $2,500 add-on. Finally, Plaintiff is entitled to $2,750 as an attorney's fee and $422.19 in costs. The

total of $9,672.19 is comparable to awards in similar geographic areas. *See, e.g., Joe Hand Promotions, Inc. v. Abu Zahri*, 969 F. Supp. 849, 850 (N.D.N.Y. 1997) ($12,175 in damages, costs and fees).

### III. CONCLUSION

For the reasons stated, the court recommends that Plaintiff be awarded $6,500 in damages, $2,750 in attorney's fees, and $422.19 in costs, for a total award of $9,672.19.[4]

DATED: January 4, 2012

       /s/   Kenneth P. Neiman
      KENNETH P. NEIMAN
      U.S. Magistrate Judge

---

[4] The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.